UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 6:12-CR-59-KKC-HAI-8 |
| ) | |
| v. ) | RECOMMENDED DISPOSITION |
| ) | |
| MARVIN COLLINS, ) | |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Caldwell (D.E. 807), the Court considers reported violations of supervised release conditions by Defendant Marvin Collins. This is his third revocation.

**I.**

Judge Thapar entered a judgment against Defendant in July 2015 following a guilty plea to conspiracy to distribute oxycodone. D.E. 611. Defendant was sentenced to 53 months of imprisonment followed by six years of supervised release. *Id.* at 2-3. Among his conditions of supervision is a special condition that he "abstain from the use of alcohol and shall not have any alcohol on the premises." *Id.* at 4. The condition notes that Defendant "may petition the Court after two (2) years of supervised release, pending no violations, to modify the condition to no excessive use of alcohol." *Id.* He began his first term of supervised release on November 7, 2016.

In March 2017, the United States Probation Office ("USPO") requested that Defendant's conditions be modified after Defendant admitted to drinking alcohol and using drugs. D.E. 668.

Judge Thapar modified his conditions to include completion of inpatient substance abuse treatment. *Id.*

In May 2017, the USPO issued a Report on Offender Under Supervision, which informed the Court that Defendant had used drugs while in treatment, and that he had transferred to another facility and secured payment for continued treatment through private insurance. D.E. 679. This report requested no action. *Id.* Defendant completed inpatient drug treatment the same month.

On June 16, 2017, the USPO reported that Defendant had violated the condition requiring him to abstain from using alcohol. D.E. 706 at 2. Defendant stipulated to the violation. *Id*. at 3. His supervised release was revoked, and he was sentenced to twelve months of incarceration, followed by six years of supervised release. D.E. 712. Defendant was released again on June 22, 2018.

On July 17, 2018, the USPO submitted a report alleging three violations. According to the citation accompanying the report, on July 10, 2018, Defendant was observed "speeding 62 in 45 zone." Defendant was stopped, and "had an open container of alcohol in the passenger compartment of his vehicle." Defendant "failed all administered field sobriety test[s]" and "refused any chemical test several times." He was charged with, among other things, first-offense DUI. The report charged Defendant with committing a state crime, using alcohol, and failure to report an arrest to Probation within 72 hours. Defendant contested the charges, but he was found guilty of all three. His supervised release was revoked, and he was sentenced to 14 months of imprisonment followed by supervision to expire on June 21, 2024. D.E. 765, 769, 770. Defendant was released on July 25, 2019.

**II.**

On August 15, 2019, the USPO submitted a Supervised Release Violation Report ("the Report") that initiated these proceedings. It alleges three violations.

Violation #1 alleges a violation of the condition that requires Defendant to notify Probation of any "change where you live or anything about your living arrangements" within 72 hours of becoming aware of the change. According to the Report, the probation officer made a home visit on August 6, 2019, and encountered the homeowner's son. The son said that the homeowner "made the defendant move out" about three days earlier. Defendant did not report the change, and there was no contact with the officer until Defendant called on August 14, 2019. This is a Grade C violation.

Violation #2 alleges a violation of the condition that prohibits unlawful use of a controlled substance. According to the Report, Defendant visited the Probation Office on August 14, after he called the officer. Defendant "admitted to ingesting Suboxone, without a prescription," around August 6 or 7, 2019.

> He also reported to have been given a Percocet tablet at the St. Joseph's emergency room a few days prior, but he did not have his discharge paperwork. The defendant denied any further drug use. He subsequently produced a urine specimen which tested positive for buprenorphine, methamphetamine, and amphetamine, via instant testing device. The defendant was shown the positive results for methamphetamine, but he continued to deny any use. This Officer advised the defendant his urine specimen was going to be sent to the laboratory for a methamphetamine confirmation test. A short time later, the defendant admitted to using methamphetamine around August 6, 2019 or August 7, 2019. He signed a Positive Urinalysis Admission Report (Prob 4), admitting to the use of buprenorphine and methamphetamine.

This is another Grade C violation.

Violation #3 charges a violation of the condition that Defendant not commit another federal, state, or local crime. Citing the Sixth Circuit's decision that use is equivalent to

3

possession, Violation #3 is a Grade B violation because Defendant's use and possession of methamphetamine and buprenorphine (without a prescription), on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a). This is a Grade B violation.

On August 16, 2019, Judge Caldwell ordered that an arrest warrant be issued. D.E. 772, 772. On May 4, 2019, the Court received a *pro se* motion from Defendant seeking early termination of supervision (D.E. 786), which was denied (D.E. 787).

On September 25, 2019, the USPO issued the First Addendum to the Report. According to the First Addendum,

> On September 14, 2019, the defendant was arrested and charged in Clay County District Court case #19-M-857, with Charge 1) Public Intoxication Controlled Substance (Excludes Alcohol), KRS 525.100, a Class B misdemeanor; and Charge 2) Alcohol Intoxication in a Public Place (1st and 2nd Offense), KRS 222.202(1), a violation. On September 15, 2019, the defendant was administratively released from the Clay County Detention Center, despite the active supervised release violation warrant in this federal case.

Violation #4 charges a Grade-C violation of the condition that prohibits Defendant from committing another federal, state, or local crime.

As the Court later learned, Defendant was released from custody on this Clay County case on September 15, 2019. D.E. 810 at 4. Two days later, he was arrested in Laurel County, and has been held at the Laurel County Correctional Center ever since. The Clay County charges remain pending.

On November 19, 2019, the USPO issued the Second Addendum to the Report. The Second Addendum alleged an additional Grade-C violation of the condition prohibiting Defendant from committing anther federal, state, or local crime. This is Violation #5, although by a typographical error the charge is listed as a second Violation #4. According to the Second Addendum,

> On November 17, 2019, the defendant was arrested and charged in Laurel County District Court case #19-T-10041, with Charge 1) Operating Motor Vehicle While Under the Influence of Alcohol/Drugs, KRS 189A.010(5)(A), a Class B misdemeanor; and Charge 2) Failure to Produce Insurance Card, KRS 304.39-117, a violation. . . . A federal detainer has been lodged against the defendant.

On October 2, 2020, the Marshals Service informed Chambers via email that Defendant "was just remanded into our custody due to a detainer filed for an SRV Warrant." An initial appearance was set.

Meanwhile, on October 5, 2020, the USPO issued a Third Addendum to the Report. The Third Addendum did not add any new violation allegations. Regarding the Laurel County charges, the Third Addendum states:

> In Laurel County District Court case #19-T-10041, which is the basis for Violation #5, the defendant was found guilty, following a jury trial, of Count 1 - Operating a Motor Vehicle While Under the Influence of Alcohol/Drugs, 1st Offense. He was sentenced to 30 days jail, fine $200, and court costs $589.00. Count 2 - Failure to Produce Insurance Card, was dismissed.

The Third Addendum also states that the Clay County charges underlying Violation #4 remain pending. Defendant told the Court at the final hearing that he is appealing the Laurel County DUI conviction.

The Court conducted an initial appearance pursuant to Rule 32.1 on October 5, 2020. D.E. 802. Defendant conceded probable cause regarding the alleged violations and waived his right to a preliminary hearing. *Id.* The United States moved for interim detention; Defendant did not request release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id.*

The parties assembled for a final hearing on October 19, 2020. The defense was prepared to stipulate to the violations, and the parties had prepared a joint recommended penalty of 24 months of incarceration with no supervised release to follow. However, Defendant wished to

5

reserve an issue for argument before Judge Caldwell. Specifically, he planned to argue that the period of over ten months that he spent in Laurel County awaiting trial should be counted toward his federal sentence on these violations. The Court continued the final hearing to October 26 to give the parties more time to investigate how Defendant came to be jailed for such a long period of time before his DUI charge was resolved and he entered federal custody.

Shortly before the October 26 hearing, Defendant filed a report which explained how and why Defendant had spent an unnecessary ten months in the Laurel County Correctional Center. D.E. 810. The same facts were discussed at the final hearing. First, Defendant should not have been released from Clay County because the federal warrant had already been issued on the original Report. Clay County issued a fugitive warrant (Defendant did not appear due to being jailed at Laurel County), but that warrant has not yet been served on Defendant. Of course, after Defendant was released from Clay County, he was rapidly arrested in Laurel County on the charges that include the DUI. Defendant, representing himself, asked for a trial. The original trial judge noted that Defendant was not releasable due to a federal detainer. The matter was transferred to a different state judge, but the jury trial was continued several times due to COVID-19 restrictions. Defendant ultimately went to trial on September 16, 2020, long after his arrest on November 17, 2019. The jury found him guilty of DUI, and he was sentenced to 30 days. Defendant served out that sentence on October 2, 2020 (he apparently was not given credit for time served), and he went into federal custody on that date.

The bottom line is that Defendant sat in state custody for about ten and a half months waiting for his eventual trial. He was not releasable on account of the federal detainer and he did not have an attorney. The parties were struggling at the October 19, 2020 hearing with the question of how they could ensure that the BOP counted those ten months as part of Defendant's

federal revocation sentence. Prior to the October 26 hearing, the parties constructed a work-around. They decided to jointly recommend a fourteen-month sentence on the understanding that the sentence would be an effective 24-month sentence in light of the ten months Defendant spent in the county jail because the federal detainer made him unreleasable. The parties recommended no additional supervised release.

At the final hearing on October 26, 2020, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 811. Defendant competently entered a knowing, voluntary, and intelligent stipulation to all five violations. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for each violation as described in the Report, First Addendum, and Second Addendum. The United States thus established all five violations under the standard of section 3583(e).

### III.

To determine an appropriate sentence, the Court has evaluated the entire record, including the Report, the Addenda, their accompanying documents, documents from prior revocations, and the sentencing materials from the underlying Judgment. Additionally, the Court has considered all the § 3553 factors imported into the § 3583(e) analysis.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to participating in a conspiracy to distribute oxycodone, here a Class C felony. *See* D.E. 611. For a Class C felony, the maximum revocation sentence provided under § 3583 is two years of imprisonment. 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original

sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violations #1, #2, #4, and #5 and a Grade B violation for Violation #3. Given Defendant's criminal history category of VI (the category at the time of the conviction in this District) and Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter Seven, is 21 to 27 months. USSG § 7B1.4(a). The statutory maximum of 24 months renders the effective Guidelines Range 21 to 24 months.

A court may also re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b), (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Given the nature of Defendant's conviction, pursuant to 21 U.S.C. § 841(b)(1)(C), there is no maximum term of supervised release that can be re-imposed.

## IV.

At the final hearing, the parties agreed that, were this a normal case, the expected sentence on a third revocation with multiple violations would be the statutory maximum of 24 months. The parties initially intended to recommend a 24-month sentence. However, both sides were concerned that the BOP might not count as part of this sentence the approximately ten months Defendant spent in jail on the federal detainer. The parties considered this possibility to be an unjust result. Accordingly, the jointly recommended penalty of fourteen months, while technically a downward departure from the Guidelines, is intended to be a workaround to ensure

---

[1] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

8

that Defendant's extra ten months in Laurel County are credited toward his revocation sentence. In other words, the parties wanted to take that time-served calculation out of the hands of the BOP. To be clear, the parties arrived at the ten-month figure by rounding down the approximate ten-and-a-half months that Defendant was jailed due to the federal detainer, not counting or including Defendant's time jailed on the sentence on the DUI conviction. To ensure that Defendant does not receive a windfall on the other hand, the parties recommended that the Court's judgment specify that his federal custody began on October 2, 2020.

The government pointed out that Defendant's opioid addiction and misuse of alcohol are well-documented in his PSR and that they drove the underlying conviction and some of the subsequent violations. Defendant already completed inpatient drug abuse treatment while on supervision. His criminal history (Category VI) is extensive and includes such things as burglary, escape, drug crimes, and being a felon in possession of a firearm. Defendant, the government argued, is bad at following society's rules. Especially because this is his third revocation, the government argued that the statutory maximum sentence of 24 months is a just sentence under the circumstances. But serving 24 months on top of the extra ten months in state custody would be inequitable in the other direction. Thus, the jointly recommended below-Guidelines sentence is intended to produce an effective 24-month sentence. The government argued that a maximum sentence would provide general deterrence and protect the public.

Concerning additional supervision after revocation, the parties agreed that Defendant has been unsuccessful on supervision. They do not expect him to fare better in the future. The resources invested in Defendant (including inpatient drug addiction treatment) have not proven successful, the parties argued, and should be directed elsewhere.

Defendant addressed the Court. Concerning the original conviction, he argued he was merely trying to support his habit. He helped people get pills so he could get some himself. He considered it inequitable that, for such a minor role in the conspiracy, he received 53 months and now about three years on supervised-release violations. He explained that he was in bad health, particularly due to rheumatoid arthritis and high blood pressure. He considers himself particularly vulnerable to COVID because his medications affect his immune system. He asked to be placed on home confinement instead of incarceration. He says he now has someone who cares about him and a place that he can go. He said that if he is incarcerated, he would like to return to FMC Lexington.

## V.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range.

The nature and circumstances of Defendant's underlying conviction for helping obtain oxycodone for distribution are serious. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). The drug conspiracy included a murder, although Defendant was not involved in that. Defendant's participation in the conspiracy was driven by his own addiction. Now, once again, Defendant is before the Court for, among other things, using opioids.

Regarding his history and characteristics, Defendant's criminal history (category VI) is horrible and impossible to ignore. Defendant has nine DUIs and four intoxication convictions. Now he has a tenth state conviction for DUI. And he has also returned to using drugs, which raises the possibility of a return to trafficking. His violations also involve two separate arrests.

His history and characteristics counsel in favor of a significant sentence and suggest he cannot perform well on supervision.

Regarding the need for training and treatment, Defendant clearly has a problem, and admits as much. Defendant has received inpatient treatment, but it did not prevent him from using drugs and drinking again.

The need to provide deterrence and to protect the public also weigh in favor of a significant sentence. Although Defendant has not been deterrable in regard to drug and alcohol use, incarceration will protect the public from his propensity to become intoxicated and drive.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into § 3583(e). Here, the breach of trust is severe because this is Defendant's third revocation. His conduct includes two arrests (including a jury conviction for DUI) and a return to using drugs and alcohol—behavior which resulted in revocation before.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. Here, on account of the unique posture of this case, the Court recommends an incarceration sentence of fourteen months. This is below the Guidelines Range of 21 to 24 months. When varying from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state "'the *specific reason* for the imposition of a sentence different from that

described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

Here, the parties and the Court agree that a just sentence is a statutory maximum sentence of 24 months. However, Defendant has already been jailed for over ten months (due to the federal detainer), which would not have occurred were it not for the COVID-19 pandemic. Nobody knows whether the BOP would count those ten months against his federal term. Accordingly, the below-Guidelines sentence is merely a workaround to ensure that Defendant does not overserve. The fourteen-month sentence is meant to account for the ten months already served, for an effective sentence of 24 months. On the other hand, to avoid a potential windfall, the Court recommends that the Judgment specify that Defendant's federal custody began on October 2, 2020, the day the federal warrant was served

For the reasons stated above, the Court finds that a sentence of fourteen months, with no supervised release to follow, is sufficient, but not greater than necessary, to meet the section 3553(a) factors incorporated into this analysis. *See* 18 U.S.C. § 3583(e). The Court thus adopts the parties' jointly recommended sentence.

## VI.

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon his stipulation, Defendant be found guilty of all five violations.

2. Revocation with a term of imprisonment of fourteen months, with October 2, 2020, specified in the judgment as the beginning date of his federal custody.

3. No additional period of supervised release.

4. That Defendant be placed, if possible, at FMC Lexington.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As discussed at the final hearing, pursuant to Rule 59(b)(2), any party wishing to object **SHALL** do so by an appropriate filing in the record within **FIVE DAYS** after being served with a copy of this recommended decision. Any party may object to any or all portions of this recommendation for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Caldwell's docket upon submission. If Defendant chooses to waive allocution, she **SHALL** do so on or before the deadline for filing objections.

This the 28th day of October, 2020.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge